# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| NERSIUS ADONLIEL ARTISANI,<br><br>Plaintiff,<br><br>vs.<br><br>DUBUQUE COUNTY, IOWA, et al.,<br><br>Defendants. | No. 25-CV-1029-CJW-MAR<br><br><br>**MEMORANDUM OPINION AND ORDER** |
| NERSIUS ADONLIEL ARTISANI,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK HAWK COUNTY, IOWA,<br><br>Defendant. | No. 25-CV-2054-CJW-MAR<br><br><br>**INITIAL REVIEW ORDER** |
| NERSIUS ADONLIEL ARTISANI,<br><br>Petitioner,<br><br>vs.<br><br>STATE OF IOWA, et al.,<br><br>Respondents. | No. 25-CV-2058-CJW-MAR<br><br><br>**INITIAL REVIEW ORDER** |

1

NERSIUS ADONLIEL ARTISANI,

        Plaintiff,

vs.

BLACK HAWK COUNTY, IOWA,
et al.,

        Defendants.

No. 25-CV-2065-CJW-MAR

**INITIAL REVIEW ORDER**

## TABLE OF CONTENTS

I.     INITIAL REVIEW STANDARD ....................................................... 4

II.    INITIAL REVIEW ANALYSIS ....................................................... 5

    A.    Section 1983 Standard ................................................... 5

    B.    Section 1983 Complaints ................................................ 6

        1.    Motions for Recusal .................................................. 6

        2.    Motions to Proceed in Forma Pauperis ...............................10

        3.    25-CV-1029-CJW-MAR .................................................12

            a.    Background ......................................................14

            b.    Overbroad and Vague Statute in Violation of
                  Due Process Clause ..............................................16

            c.    False Arrest ....................................................20

            d.    False Imprisonment ..............................................22

e.      Malicious Prosecution ………………………………………24

f.      Abuse of Process / Due Process …………………………27

g.      Equal Protection ………………………………………………28

h.      Cruel and Unusual Punishment ……………………………29

i.      Legal Malpractice ……………………………………………29

4.      25-CV-2054-CJW-MAR………………………………………30

a.      Due Process ……………………………………………………33

b.      Failure to Supervise and Train ……………………………35

c.      Grievances ……………………………………………………36

d.      Equal Protection ………………………………………………37

e.      Retaliation ……………………………………………………39

f.      State Law Claims ……………………………………………40

5.      25-CV-2065-CJW-MAR………………………………………40

C.      Habeas Petition ……………………………………………………44

1.      Motion to Proceed in Forma Pauperis……………………44

2.      Applicable Standards ………………………………………45

3.      25-CV-2058-CJW-MAR………………………………………47

III.      CONCLUSION ………………………………………………………53

This matter is before the Court on four cases filed by Nersius Adonliel Artisani within the past four months. In three of the cases, plaintiff filed a pro se motion to proceed in forma pauperis and a Title 42, United States Code, Section 1983 complaint. In the fourth case, petitioner filed a pro se motion to proceed in forma pauperis and a petition for a writ of habeas corpus under Title 28, United States Code, Section 2254. For the reasons set forth below, the Court grants the motions to proceed in forma pauperis in each case. The Court dismisses his complaint or petition in case numbers 25-CV-1029-CJW-MAR and 25-CV-2058-CJW-MAR, but allows his complaint to proceed past initial review in case numbers 25-CV-2054-CJW-MAR and 25-CV-2065-CJW-MAR.

## I. INITIAL REVIEW STANDARD

Courts must liberally construe a pro se complaint. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). However, the Court may dismiss an in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant that is immune from a monetary judgment. 28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(b)(1) (requiring courts to conduct initial reviews of prisoner complaints).

In reviewing a prisoner or in forma pauperis complaint, unless the facts alleged are clearly baseless, they must be weighed in favor of the plaintiff. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Pro se complaints, however, must allege sufficient facts to support the plaintiff's claim. *Stone*, 364 F.3d at 914. A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). In determining whether a complaint fails to state a claim under Section 1915(e)(2), courts

generally rely on the standards articulated in Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128–29 (8th Cir. 1996) (applying Rule 12(b)(6) standard to a dismissal under 28 U.S.C. § 1915(e)(2). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Section 1915(e)(2), a court may review the complaint and dismiss sua sponte those claims that fail "to raise a right to relief above the speculative level," *id.* at 555, or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.

## II.      INITIAL REVIEW ANALYSIS

### A.      Section 1983 Standard

Title 42, United States Code, Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also*

5

*Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B.     Section 1983 Complaints

#### 1.     Motions for Recusal

Plaintiff filed a pro se motion for recusal in two of the Section 1983 cases. (25-CV-1029-CJW-MAR, Doc. 4; 25-CV-2054-CJW-MAR, Doc. 2). He argues that the Northern District of Iowa has another district court judge, but the undersigned judge consistently has been assigned to his cases. (25-CV-1029-CJW-MAR, Doc. 4, at 1). He states that he "feels that the repeated presence of the same judge is impacting his cases negatively" and requests that a different judge be assigned to the present cases to ensure fair and impartial treatment. *Id.*

Recusal is required when the presiding judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Pope v. Federal Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992) (citing *Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291, 1300 (8th Cir. 1982)). *See also Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) ("a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require"). Section 455(a) imposes an objective reasonableness standard based not on whether a litigant "might

6

believe that a bias exist[s]" but "whether the 'average person on the street' would question the impartiality of the judge." *Id.*

As this Court has previously explained to plaintiff,[1] rulings adverse to plaintiff neither constitute actual prejudice nor the reasonable appearance of prejudice. "Judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 554 (1994); *see also Harris v. State of Mo.*, 960 F.2d 738, 740 (8th Cir. 1992) ("An unfavorable judicial ruling, however, does not raise an inference of bias or require the trial judge's recusal."); *Murphy v. Kempker*, No. 03-6052-CV-SJ-GAF-P, 2003 WL 27385945, at *1 (W.D. Mo. Sept. 11, 2003) ("My rulings in two of plaintiff's prior cases do not, therefore, provide a basis for recusal."). Instead, a judge's rulings can constitute grounds for appeal, not recusal. *Id.* "[N]either a judge's unfavorable rulings nor his opinions held as a result of earlier proceedings necessarily infer bias unless they are 'so extreme as to display a clear inability to render fair judgment.'" *Terra Int'l, Inc. v. Robinson*, 113 F. App'x 723, 724 (8th Cir. 2004). Plaintiff makes unjustified conclusions simply because the undersigned judge has been assigned to his cases. Plaintiff cites no authority for the proposition that there is a conflict of interest simply because the undersigned judge also handled previous cases that plaintiff filed.

Plaintiff contends that the undersigned judge's alleged "antagonism and bias towards me is the result of his being involved in my cases since 2018 and as a result of receiving relief in two sep[a]rate appeals (23-2984 and 25-2095) which overturned his erroneous rulings." (25-CV-1029-CJW-MAR, Doc. 5, at 3). One of those cases arose in the Southern District of Iowa. *See Artisani v. Keller, et al.*, No. 25-2095 (8th Cir.

---

[1] The Court denied plaintiff's motions for recusal in prior cases. *See, e.g.*, 25-CV-2045-CJW-MAR, Doc. 10, at 2-3; 25-CV-2089-CJW-MAR, Doc. 8, at 2-4.

Aug. 20, 2025).  In the other appeal, the Eighth Circuit simply affirmed in part and reversed in part an initial review order.  A reasonable person would not question the impartiality of the undersigned judge simply because in one of the many cases involving the plaintiff the appellate court reversed in part one ruling.  Nor has plaintiff identified any evidence of deep-seated antagonism toward him.

In addition, plaintiff appears to argue that the undersigned cannot be unbiased in any prisoner case.  He states that "[e]ven a cursory review of his ruling in prisoner related cases will reveal a long standing agenda . . . to deliberately and corruptly rule the rights of pretrial detainees and other types of prisoners 'out of existence.'"  (25-CV-1029-CJW-MAR, Doc. 5, at 10).  He does not provide evidence establishing such an agenda and inability to be unbiased in an entire class of cases.  Plaintiff's conclusory assertion that the undersigned's ruling in other cases display "a deep seated favoritism toward government officials" is unsupported.  He states that "there are several well-established prisoner rights cases in the Eighth Circuit favorable to a prisoner's status and overall legal position and not one single case has [the undersigned's] name on it."  (25-CV-1029-CJW-MAR, Doc. 5, at 10).  Plaintiff also filed an unsupported affidavit alleging the undersigned has an "agenda which serves to deliberately and corruptly influence, obstruct, and impede the due administration of justice" in plaintiff's actions and generally prisoners' cases.  (*See, e.g.*, 25-CV-1029-CJW-MAR, Doc. 5, at 2).[2]  His conclusory argument that the undersigned either cannot or is not unbiased in prisoner cases is unfounded and simply does not hold water.

---

[2] Plaintiff construes the Court's attempt to give him the opportunity to improve and remedy deficiencies in his complaint as a "frivolous attempt to retaliate against him . . . and fulfill a corrupt agenda aimed at creating a body of case law intended to corrupt the rights of prisoners and obstruct justice."  (25-CV-1029-CJW-MAR, Doc. 5, at 7).

8

Even though plaintiff repeatedly speculates that the undersigned has deep-seated antipathy toward him, he fails to demonstrate any actual bias or antagonism. Other than simply relying on rulings in other cases adverse to plaintiff, he only relies on one statement by the undersigned, and that statement demonstrates no hostility or bias towards plaintiff. Plaintiff takes issue with the undersigned's statement in an initial review order that "Plaintiff has filed several previous cases before this Court and has acquired three qualifying strikes . . .. Beyond cases the Court previously dismissed as frivolous, plaintiff has an ongoing case (23-CV-2045-CJW-MAR) that is currently pending. The Court initially dismissed that case at the initial review stage; however, that decision was reversed by the Eighth Circuit Court of Appeals." (23-CV-2089-CJW-MAR, Doc. 23, at 1, n.2 (noting that plaintiff has filed several previous cases before this Court)). Plaintiff disputes whether he has had cases previously dismissed as frivolous and interprets the order's statement as hostile. Yet it does not reflect any bias or antagonism toward plaintiff, even if it is mistaken.[3] Certainly a statement that plaintiff previously filed frivolous complaints does not evidence a disposition "so extreme as to display clear inability to render fair judgment."

Plaintiff has failed to establish actual or presumed bias. The Court finds no conflict of interest exists, and the Court will not recuse itself. Plaintiff's motions for recusal (25-CV-1029-CJW-MAR, Doc. 4; 25-CV-2054-CJW-MAR, Doc. 2) are **denied**.[4]

---

[3] A survey of the eight prior civil cases filed in this district indicates that: the Court granted defendants' motions to dismiss for failure to state a claim in two cases, the Court granted summary judgment to defendants in three cases, and the Court dismissed two cases based on filing fees.

[4] Additionally, this district has only two judges.

## 2. *Motions to Proceed in Forma Pauperis*

Plaintiff, who is incarcerated at the Iowa State Penitentiary ("ISP") in Fort Madison, Iowa, did not submit the statutory filing fee in any of the three Section 1983 cases. *See* 28 U.S.C. § 1914(a) (requiring filing fee). For a court to authorize the commencement of an action without the prepayment of the filing fee, a person must submit an affidavit that includes a statement of all the assets the person possesses. *See* 28 U.S.C. § 1915(a)(1). In addition, a prisoner must submit a certified copy of the trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of the complaint, obtained from the appropriate official of each prison at which the prisoner was or is confined. *See* 28 U.S.C. § 1915(a)(2).

Plaintiff filed motions to proceed in forma pauperis that included an affidavit addressing the number of strikes he has accrued under Title 28, United States Code, Section 1915(g)2 and asserts that he has a negative account balance. (25-CV-1029-CJW-MAR, Doc. 1; 25-CV-2054-CJW-MAR, Doc. 1; 25-CV-2065-CJW-MAR, Doc. 1). In case number 25-CV-1029-CJW-MAR, plaintiff initially failed to comply with the remaining requirements of Section 1915(a) because he failed to submit a certified copy of his prison trust fund account statement. On September 25, 2025, the Court gave plaintiff 30 days to either pay the filing fee or file an amended motion to proceed in forma pauperis that included a copy of his prison trust fund statement or institutional equivalent and otherwise complied with the relevant rules. (25-CV-1029-CJW-MAR, Doc. 2). On October 22, 2025, plaintiff filed an amended motion to proceed in forma pauperis that included both an affidavit and a prison trust fund account statement. (25-CV-1029-CJW-MAR, Doc. 3). As such, plaintiff has now submitted documents that substantially comply with the requirements set out above in case number 25-CV-1029-CJW-MAR. The Court will apply the amended motion to proceed in forma pauperis to all three Section 1983

cases.[5]  Because it is clear that plaintiff does not have the assets necessary to pay the filing fees, his motions to proceed in forma pauperis are granted.  Nevertheless, even when a court grants a prisoner-plaintiff in forma pauperis status, that plaintiff is still required to pay the full $350.00 filing fee by making payments on an installment basis.  28 U.S.C. § 1915(b)(1); *see also In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997) ("[T]he [Prisoner Litigation Reform Act] makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal.").  The full filing fee will be collected even if the court dismisses the case because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks money damages against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

Plaintiff must pay an initial partial filing fee in each case in the amount of twenty percent of the greater of his average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint.  28 U.S.C. § 1915(b)(1).  Based on the documents that plaintiff submitted, the Court finds that the initial partial filing fee is $5.00 for each case.  (*See* 25-CV-1029-CJW-MAR, Doc. 3, at 5).  Plaintiff must submit $5.00 for each of these three cases by no later than 30 days from the date of this order.  If the court does not receive payment by this deadline, the instant actions will be dismissed under Federal Rule of Civil Procedure 41(b) (permitting dismissal when a plaintiff either fails to prosecute or fails to respond to an order of the court); *Hutchins v. A.G. Edwards & Sons*, 116 F.3d 1256, 1259–60 (8th Cir. 1997) (explaining court's

---

[5] Plaintiff also filed a trust fund account statement dated October 10, 2025, in 25-CV-2065-CJW-MAR, but that statement includes a handwritten note that "the offender asked for timeframe of 9/30/24-3/30/25" and thus the statement reflects data from that period of time.  (25-CV-2065-CJW-MAR, Doc. 1, at 3).  The Court will utilize the account statement from 25-CV-1029-CJW-MAR because it reflects the data for a more recent timeframe.  Plaintiff failed to file a trust fund account statement in case number 25-CV-2054-CJW-MAR.

power to dismiss an action). If necessary, plaintiff may request in a written motion an extension of time to pay the initial partial filing fees.

In addition to the initial partial filing fee, a prisoner-plaintiff must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court. Specifically:

> [a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after plaintiff pays in full the initial partial filing fees discussed above, the remaining installments will be collected by the institution having custody of the plaintiff. The Clerk of Court is directed to send a copy of this order and the notice of collection of filing fees to the appropriate official at the place where plaintiff is an inmate.

### 3. 25-CV-1029-CJW-MAR

In 25-CV-1029-CJW-MAR, plaintiff filed a pro se complaint under Title 42, United States Code, Section 1983 on September 19, 2025. (*See* 25-CV-1029-CJW-MAR, Doc. 1-1). He names as defendants Dubuque County, Iowa; Dubuque County Assistant County Attorney Joshua Sims; two unknown City of Dubuque police officers; the State of Iowa; the Iowa Attorney General; attorney Christopher Raker; and the unknown professional liability insurance carrier of Christopher Raker. (*Id.*, at 2-5). On his initial Section 1983 form, plaintiff states that the events giving rise to his claims occurred on

12

August 13, 2021, at Gino's East restaurant. (*Id.*, at 6-7). His Section 1983 form asserts that the federal constitutional or statutory rights that were violated include:

> 1). unconstitutionally vague/overbroad statute, 2). malicious prosecution (42 U.S.C. 1983), 3). abuse of process (42 U.S.C. 1983), 4). false imprisonment (42 U.S.C. 1983) 5). 14th Amendment equal protection, 6). 8th and 14th Amendment due process, 7). False arrest, 8). Legal malpractice, 9) unconstitutional conviction.

(*Id.*, at 3).

Plaintiff asserts that on August 13, 2021, he was "involved in a physical altercation with his supervisor at Gino's East and he was charged with willful injury causing serious injury in violation of Iowa Code § 708.4(1) and disorderly conduct by fighting in violation of Iowa Code § 723.4(1). (*Id.*, at 8). He contends that he "asserted the defenses of Iowa's 'Stand Your Ground' law and self-defense." (*Id.*). Plaintiff states that a jury found him not guilty of willful injury causing serious injury on May 6, 2022, but guilty of disorderly conduct by fighting. (*Id.*). He states that his attorney Raker filed a motion in arrest of judgment alleging the verdicts were inconsistent, and "that because the jury found he was justified in using force in the assault, he was therefore justified in his actions amounting to Disorderly Conduct by Fighting." (*Id.*). He asserts that he had been incarcerated for 273 days when the court imposed a sentence of 30 days with credit for time served. (*Id.*).

Plaintiff asserts that he filed an application for post-conviction relief ("PCR") and that "the conviction of Disorderly Conduct was vacated and set aside." (*Id.*). Plaintiff asserts that he advanced various arguments in his PCR application, including violations of the Fifth, Eighth, and Fourteenth Amendments and failure to file a timely notice of appeal, and that he "won post-conviction relief on June 17, 2024 [in] PCCV114275." (*Id.*, at 4, 8). He states that he argued that the disorderly conduct by fighting statute is vague and overbroad, but "[t]he PCR court found that court appointed counsel in

FECR143144 Chris Raker rendered ineffective assistance of counsel." (*Id.* at 4, 8). He states that, after his disorderly conduct conviction was vacated, he filed a motion to dismiss and the Iowa District Court dismissed the charges with prejudice. (*Id.*, at 8).

Plaintiff's complaint argues that the Iowa disorderly conduct statute is unconstitutionally vague and overbroad and that he was arrested and imprisoned without probable cause because he had "criminal immunity" against a disorderly conduct charge. For relief, he seeks damages, including $1,000,000 for 273 days spent in the Dubuque County Jail "pursuant to unconstitutional and overbroad statute 723.1 Disorderly Conduct by Fighting," $100,000 for false arrest against the unnamed officers, $100,000 for false imprisonment against defendant Sims, $100,000 for an unconstitutional conviction, a declaration that Iowa Code Section 723.1 is unconstitutional and overbroad, and a declaration that defendant Raker committed legal malpractice. (*Id.*, at 10).

### a.    *Background*

On September 24, 2025, while giving plaintiff 30 days to file an amended motion to proceed in forma pauperis with a trust fund account statement, the Court also gave him 30 days to file an amended complaint. (25-CV-1029-CJW-MAR, Doc. 2, at 2). The Court stated the complaint did not comply with Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of each claim against each defendant. (*Id.*). Plaintiff's complaint lists 8 defendants and 9 claims, and it fails to clearly set forth each of the claims against each defendant. The Court noted that he "lists numerous violations that he asserts occurred but he does not tie individual defendants to each of those claims. For example, plaintiff does not describe how any defendant violated his equal protection rights." (*Id.*). The Court also noted that "[i]t also appears that his claims are untimely and likely barred by res judicata." (*Id.*, at 3 n.4). The Court concluded that "[i]f plaintiff fails to file an amended complaint, this case will be dismissed for failure to state a claim

with no further order of the Court." (*Id.*, at 3). In other words, the Court gave plaintiff the opportunity to correct apparent defects in his complaint.

Plaintiff, however, did not file an amended complaint.[6] Rather, on October 22, 2025, plaintiff filed a 13-page handwritten motion to stand on his original Section 1983 complaint that was docketed as a pro se supplement to his complaint. (25-CV-1029-CJW-MAR, Doc. 5, at 6-18). He states that he "hereby makes the court aware that he is declining to amend his complaint at this time, as the supposed 'deficiencies' alleged to have been present in his complaint are [ ] 'inventions' of the district court." (*Id.*, at 6). He asserts that "the district court's alleged 'deficiencies' are in fact unsupported by current law and his mistreatment of Plaintiff's 42 U.S.C. 1983 claim is a frivolous attempt to retaliate against him, misapply existing Eighth Circuit law and [unintelligible] and fulfil a corrupt agenda aimed at creating a body of case law intended to corrupt the rights of prisoners and obstruct justice." (*Id.*, at 7). He dedicates the first pages to arguing whether his claims are time-barred and the remainder of his motion revisits his recusal argument. Even though plaintiff rejected the opportunity that the Court provided to set forth his claims more clearly and remedy associated defects in his complaint, he provides some additional factual allegations and argument in his supplement.[7]

---

[6] Plaintiff should take note that a failure to comply with a court order may result in the involuntary dismissal of his action. *See* Fed. R. Civ. P. 41(b) (involuntary dismissal for failure to prosecute or comply with court order); *Henderson v. Renaissance Grand Hotel,* 267 F. App'x. 496, 497 (8th Cir. 2008) (unpublished opinion) ("A district court has discretion to dismiss an action under Rule 41(b) for a plaintiff's failure to prosecute, or to comply with the Federal Rules of Civil Procedure or any court order."); LR 41(a)(4).

[7] On December 16, 2025, plaintiff filed a notice of appeal stating that he appeals "following the District Court for the Northern District of Iowa's dismissal of Plaintiff's 42 USC 1983 action in its entirety and requests relief from such final judgment to the extent that the District Court improperly dismissed such 42 USC 1983 action for failure to state a claim upon which relief may be granted." (Doc. 6, at 1). However, the Court had not yet dismissed his action or issued

### b. Overbroad and Vague Statute in Violation of Due Process Clause

Plaintiff's first claim is that Iowa statute prohibiting disorderly conduct by fighting, Iowa Code Section 723.4(1), is "overbroad and so vague that it fails to give ordinary people fair notice of the conduct it punishes and/or so standard less that it invites arbitrary enforcement" such that it "violates Artisani's due process protections." (25-CV-1029-CJW-MAR, Doc. 1-1, at 8).

A plaintiff can assert an imprecise law is invalid as either vague or overbroad. *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013). First, a plaintiff can bring a Section 1983 claim asserting that his due process rights have been violated by a statute or regulation that is void for vagueness. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The government violates the due process clause when it takes "away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "Fair notice is lacking where the statute 'forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Bio Gen LLC v. Sanders*, 142 F.4th 591, 603–04 (8th Cir. 2025) (quoting *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir. 1997)). For example, in

---

a final judgment. On December 18, 2025, the Eighth Circuit issued an order stating that this Court had determined that plaintiff has three strikes and holding that he could not proceed with his appeal without first paying the full appellate fee. (Doc. 10). As detailed above, though, the Court only issued an order instructing plaintiff to file an amended motion to proceed in forma pauperis with a trust fund account statement. On January 12, 2026, plaintiff filed a motion for leave to proceed on appeal in forma pauperis. (*Artisani v. Dubuque Cnty.*, 25-3491, Doc. 5596668.).

16

*City of Chicago v. Morales,* 527 U.S. 41 (1999), an ordinance that allowed police to arrest gang members who were "remain[ing] in any one place with no apparent purpose" was invalid because it gave both "too much discretion to the police and too little notice to citizens who wish to use the public streets." *Id.* at 47 (brackets in original). Importantly, when a statute reaches expression protected by the First Amendment, the void of vagueness doctrine "demands a greater degree of specificity than in other contexts." *Smith v. Goguen,* 415 U.S. 566, 573 (1974).

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *Morales,* 527 U.S. at 52 (citation omitted); *see also Turchick v. United States,* 561 F.2d 719, 721 (8th Cir. 1977) ("The aim of facial overbreadth analysis is to eliminate the deterrent or 'chilling' effect an overbroad law may have on those contemplating conduct protected by the First Amendment." (footnote omitted)). However, the overbreadth doctrine is restricted in its application and is "not recognized . . . outside the limited context of the First Amendment." *United States v. Salerno,* 481 U.S. 739, 745 (1987); *Schall v. Martin,* 467 U.S. 253, 268 n.18 (1984) ("[O]utside the limited First Amendment context, a criminal statute may not be attacked as overbroad."); *Musser v. Mapes*, 718 F.3d 996, 1001 (8th Cir. 2013) (holding that plaintiff was precluded from asserting an overbreadth challenge because he did not raise any First Amendment concerns).

Plaintiff argues that Iowa Code Section 723.4(1) criminalizes "lawful conduct constituting lawful use of force under Iowa Code 704 in that it punishes Artisani's lawful use of force to protect himself in public against an aggressor wherein Artisani was lawfully present and had no duty to retreat." (25-CV-1029-CJW-MAR, Doc. 1-1, at 10). In addition to citing Iowa Code Section 704, he also relies on Iowa Code Section 704.13. Plaintiff asserts that the "State of Iowa and/or Dubuque County, Iowa remain liable for

all punishment of Artisani lastin[g] 273 days pursuant to the unconstitutional statute in Iowa Code 723.1 [sic]." (*Id.*, at 9).

As an initial matter, the Court finds that this claim is timely. In *Heck v. Humphrey*, the Supreme Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. 477, 489–90 (1994). Plaintiff asserts that his conviction was invalidated on June 17, 2024. (25-CV-1029-CJW-MAR, Doc. 1-1, at 4). Section 1983 claims are governed by the relevant state's personal injury statute of limitations. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985). In Iowa, Section 1983 actions are subject to a two-year statute-of-limitations. *See* Iowa Code § 614.1(2). Plaintiff filed his complaint on June 19, 2025, and thus this claim is timely.

As noted above, plaintiff was charged with willful injury causing serious injury in violation of Iowa Code Section 708.4(1) and disorderly conduct by fighting in violation of Iowa Code Section 723.4(1). In Iowa, a person commits the simple misdemeanor of disorderly conduct when he or she "[e]ngages in fighting or violent behavior in any public place or in or near any lawful assembly of persons." Iowa Code § 723.4(1) (2020). It appears that plaintiff asserts he was innocent of disorderly conduct based in part on the justification defense. The Supreme Court of Iowa has explained that:

> The justification defense is built on the notion that one is justified, and thus shouldn't be held criminally liable for, using reasonable force to protect against an imminent threat or harm. *State v. Ellison*, 985 N.W.2d 473, 477 (Iowa 2023). Iowa Code § 704.3 provides that "[a] person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force." "Reasonable force" is defined as "that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss." *Id.* § 704.1(1).

*State v. Johnson*, 7 N.W.3d 504, 508–09 (Iowa 2024). However,

18

The use of force is generally not justified when the person knows that she can avoid it safely by retreating or taking an alternate course. *See, e.g.*, *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 870 (Iowa 2019). But in 2017, the legislature added an exception to the duty-to-retreat provision stating that "[a] person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force." 2017 Iowa Acts ch. 69, § 37 (codified at Iowa Code § 704.1(3) (2018)). The new subsection, providing what's colloquially referred to as the "right to stand your ground," modified the usual requirement that a person facing an imminent threat must retreat if possible before using force. The statute makes clear that people need not retreat from a place where they are lawfully present and are not engaged in illegal activity before using force. *Id.*; *State v. Williams*, 929 N.W.2d 621, 637 (Iowa 2019). In other words, if a person is engaging in illegal activity or is unlawfully present, the duty to retreat remains. *Lorenzo Baltazar*, 935 N.W.2d at 870.

*Id.*, at 509. In other words, "the duty to retreat remains an *exception* to the justification defense and that the stand-your-ground defense is an *exception* to the duty to retreat." *State v. Ellison*, 985 N.W.2d 473, 479 (Iowa 2023) (emphasis in original).

The justification defense applies to numerous criminal charges in Iowa and the plaintiff has not identified any authority holding that the potential availability of such a defense renders the statute forming the basis for the charge void as vague. Nor has the Court found any. Plaintiff's complaint does not assert that the PCR court adopted his argument that Section 723.4(1) is vague or overbroad. To the contrary, the complaint only asserts that the PCR court found in his favor based on ineffective assistance of counsel, and the Court must take that allegation as true at this stage of the proceedings. The plaintiff makes the conclusory assertion that "[c]onvicting Artisani of Disorderly Conduct for engaging in lawful conduct is overbroad and so vague that it fails to give ordinary people fair notice of the conduct it punishes and/or so standard less that it invites arbitrary enforcement." (25-CV-1029-CJW-MAR, Doc. 1-1, at 8). Yet he does not identify a word or clause from Section 723.4(1), that is problematic. He does not assert

that "engages" or "fighting" or "violent behavior" are unclear. Rather, his argument appears solely to be that Section 723.4(1)'s prohibition on "fighting or violent behavior in any public place or in or near any lawful assembly of persons" is unconstitutional because of the existence of a defense stemming from Sections 704.1, 704.3, and 704.13.[8] He states that he argued during the PCR proceedings that Section 723.4(1) "is unconstitutionally vague and overbroad "in criminalizing lawful conduct constituting lawful justified use of force under Iowa Code 704 in that it punishes his lawful use of reasonable force to protect himself in public against an aggressor, where Artisani was lawfully present and had no duty to retreat." (*Id.*, at 8). This argument appears to rely on an assertion that one may not know what constitutes reasonable force, even though it is defined in Section 704.1. The Court finds plaintiff's argument itself is vague, and that he fails to establish that the Section 723.4(1) is unconstitutionally vague. In addition, he is precluded from asserting an overbreadth challenge because he did not raise any First Amendment concerns. This claim is dismissed for failure to state a cognizable claim.

### c.    *False Arrest*

Plaintiff asserts false arrest claims against two unknown City of Dubuque police officers, stating that they "did not have probable cause to charge Artisani with Disorderly Conduct by Fighting and therefore subjected Artisani to false arrest and false imprisonment." (25-CV-1029-CJW-MAR, Doc. 1-1, at 9). The complaint does not

---

[8] Iowa Code Section 704.13 provides that "a person who is justified in using reasonable force against an aggressor in defense of oneself, another person, or property pursuant to section 704.4 is immune from criminal or civil liability for all damages incurred by the aggressor pursuant to the application of reasonable force." The Iowa Supreme Court has stated that "[s]ignificantly, section 704.13 provides an immunity from 'liability,' [ ] not an immunity from 'prosecution' as in some other states with stand-your-ground laws." *State v. Wilson*, 941 N.W.2d 579, 581 (Iowa 2020). In so holding, the court explained that "immunity from liability does not relieve the defendant from having to defend the case."

specify whether he is asserting a false arrest claim under Section 1983 or a state law false arrest claim.

With respect to a Section 1983 false arrest claim, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Section 1983 claims accrue 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081-82 (8th Cir. 2018) (quoting *Wallace*, 549 U.S. at 388). The United States Supreme Court has held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant is detained pursuant to legal process." *Wallace*, 549 U.S. at 397 (rejecting the argument that a false arrest claim would not accrue until the State dropped the charges or they were otherwise dismissed). The Court specifically rejected the application of *Heck* principles to false arrest claims. "Thus, while *Heck* holds that § 1983 claims *analogous to malicious prosecution* accrue when the underlying conviction or sentence has been invalidated, *Wallace* holds that 'the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained due to legal process.'" *White v. Smith*, No. 4:09CV3145, 2009 WL 3335967, at *9 (D. Neb. Oct. 14, 2009) (quoting *Wallace*, 549 U.S. at 397). Here, a criminal complaint was filed in the Iowa District Court on August 14, 2021. As such, plaintiff needed to file a Section 1983 false arrest claim by August 14, 2023, yet he did not file his complaint until September 19, 2025. Thus, to the extent plaintiff is asserting Section 1983 false arrest claim, it is time-barred.

Turning to a common law claim of false arrest, Iowa courts have not clearly set forth when the statute of limitations begins to run on false arrest claims. However, "there

appear to be three different times from which [other] courts have found the statute of limitations begins to run:" (1) the time of arrest; (2) the time of arraignment or when legal process is initiated (like a Section 1983 claim); or (3) the time of the termination of the false or illegal imprisonment (*i.e.*, when the plaintiff was released from confinement). *Gose v. Bd. of Cnty. Comm'rs of Cnty. of McKinley*, 727 F. Supp. 2d 1256, 1262 (D.N.M. 2010). The Court need not determine which approach Iowa would utilize because under any of these approaches plaintiff's common law false arrest claim would be untimely. The latest of these dates is May 12, 2022, the date plaintiff asserts that he was released, which is more than two years before he filed his complaint. (25-CV-1029-CJW-MAR, Doc. 1-1, at 9).

Accordingly, plaintiff's false arrest claim against the two unnamed police officers is dismissed as time-barred.

### d.     False Imprisonment

Plaintiff lists a claim for "false imprisonment (42 U.S.C. 1983)" on his Section 1983 form. (25-CV-1029-CJW-MAR, Doc. 1-1, at 3). He states that Sims "subjected Artisani to False Imprisonment and Malicious Prosecution by imprisoning him for 273 days absent probable cause and in prosecuting Artisani absent probable cause and knowing that Artisani had criminal immunity against any charge of Disorderly Conduct." (*Id.*, at 9). He also asserts the two unknown police officers subjected him to false imprisonment. (*Id.*).

As an initial matter, plaintiff indicates he is making a false imprisonment claim under Section 1983. "[F]alse imprisonment is a state-law claim that is not actionable under § 1983." *Rinne v. City of Beatrice*, No. 4:18CV3037, 2018 WL 4492227, at *7 (D. Neb. Sept. 19, 2018) (citing *King v. Beavers*, 148 F.3d 1031, 1034 (8th Cir. 1998)). The Eighth Circuit has stated that "[f]alse imprisonment is a state law tort claim. It is not coextensive with the Fourteenth Amendment, which 'protects only against

22

deprivations of liberty accomplished 'without due process of law.'" *King*, 148 F.3d at 1034 (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). With respect to the Fourth Amendment, false imprisonment is an extension of unlawful arrest – the two claims overlap." *Setchfield v. St. Charles Cnty.*, No. 4:21-CV-923, 2023 WL 3275548, at *11 (E.D. Mo. May 5, 2023), *aff'd,* 109 F.4th 1084 (8th Cir. 2024). Accordingly, plaintiff's false imprisonment claim under Section 1983 is an extension of and encompassed within his false arrest claim under the Fourth Amendment. *See id.* ("the Court finds Plaintiff's false imprisonment claim is not a separate claim but is encompassed within Plaintiff's claim for unlawful arrest under the Fourth Amendment"). Even assuming false imprisonment is a separate claim cognizable under Section 1983, here it is barred by the statute of limitations. "A claim for false imprisonment accrues when the plaintiff becomes detained 'pursuant' to 'legal process.'" *Martin v. Julian*, 18 F.4th 580, 583 (8th Cir. 2021) (citing *Wallace*, 549 U.S. at 389). As explained above, his legal process began more than two years before he filed his complaint.

In addition, liberally construing plaintiff's complaint to asserts a state law false imprisonment claim, that claim does not survive initial review for the same reason. Under the common law, "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." *Wallace*, 549 U.S. at 389. In other words, "[f]or false imprisonment, the statute begins to run only when the imprisonment ends, since the period of imprisonment is treated as a unit." Restatement (Second) of Torts § 899 cmt. c (1979). As previously noted, plaintiff asserts that he was released from prison on May 12, 2022, rendering any false imprisonment claims untimely.

Moreover, on the merits, plaintiff fails to state a cognizable claim. False imprisonment is defined as an unlawful restraint on freedom of movement or personal liberty. *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477 (Iowa 1982). The elements

of the tort are (1) detention or restraint against a person's will, and (2) unlawfulness of the detention or restraint. *Id.* Plaintiff was charged under a law that has not been invalidated and he was found guilty by a jury of that charge. As a result, while in custody, plaintiff was lawfully imprisoned and his imprisonment cannot serve as the basis for a false imprisonment claim.

### e.    *Malicious Prosecution*

Plaintiff also lists "malicious prosecution (42 U.S.C. 1983)" on his Section 1983 form as a claim. (25-CV-1029-CJW-MAR, Doc. 1-1, at 3). He asserts that defendant Sims subjected him to "Malicious Prosecution by imprisoning him for 273 days absent probable cause and in prosecuting Artisani absent probable cause and knowing that Artisani had criminal immunity against any charge of Disorderly Conduct." (*Id.*, at 9).

A malicious prosecution claim is only cognizable under 42 U.S.C. § 1983 if the "alleged wrongful conduct . . . also infringe[d] some provision of the Constitution or federal law." *Dunn v. Does 1–22*, 116 F.4th 737, 751 (8th Cir. 2024) (alterations in original) (internal quotation omitted) (quoting *Martin*, 18 F.4th at 584). The Supreme Court has held that malicious prosecution is actionable under the Fourth Amendment.[9] *Thompson v. Clark*, 596 U.S. 36, 42 (2022). To state a claim of malicious prosecution under the Fourth Amendment, "[a] plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022) (citing *Thompson*,

---

[9] As noted above, plaintiff's Section 1983 malicious prosecution claim appears timely because plaintiff asserts that he received post-conviction relief on June 17, 2024. *See Heck*, 512 U.S. at 489 (stating that "a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor").

596 U.S. at 44). "[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Thompson*, 596 U.S. at 43. The Eighth Circuit has stated that a plaintiff must "show malice—that is, an improper purpose for bringing the action or using the process . . . [and] that the defendant instituted proceedings without reasonable grounds for doing so." *Brown v. Am. Fed'n of State, Cnty. & Mun. Emps., Council No. 5, AFL-CIO*, 41 F.4th 963, 968 (8th Cir. 2022).

Here, plaintiff's malicious prosecution claim against Sims relates to plaintiff's allegations of prosecution without probable cause and with immunity. These allegations constitute nothing more than labels and conclusions and do not support a claim for malicious prosecution. The complaint does not allege that Sims' motive in prosecuting plaintiff was malicious. Nor does it contain any factual allegations demonstrating any malice by Sims. Plaintiff has pleaded no facts that Sims harbored any sort of personal animosity or hatred towards him that caused the prosecution. He simply alleges that Sim knew "that Artisani had criminal immunity against any charge of Disorderly Conduct." As explained above, to the extent plaintiff is relying on Iowa Code Section 704.13, that provides allows an immunity from liability not an immunity from prosecution. A prosecutor's awareness that plaintiff might opt to assert a particular defense does not evidence malice toward the plaintiff. Because plaintiff has failed to allege facts showing an essential element of malicious prosecution—the malice itself—he has failed to allege a cognizable claim of malicious prosecution. *See Gunn v. Stearns*, No. 4:25-CV-04034, 2025 WL 2416132, at *9 (D.S.D. Aug. 21, 2025) (dismissing Section 1983 malicious prosecution claim because "Gunn's Complaint alleges no facts showing that SA Hoffman initiated the proceedings based on a malicious motive."). The Court need not consider whether he has plausibly alleged a lack of probable cause.

25

In addition, Sims is entitled to prosecutorial immunity. In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id*. at 431. "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). Prosecutors are entitled only to qualified immunity, however, when their actions are "investigatory" or "administrative" in nature. *Buckley v. Fitzsimmons,* 509 U.S. 259, 272 (1993) (affirming that "acts undertaken by a prosecutor in preparing the initiation of judicial proceedings [. . .], and which occur in the course of the [prosecutor's] role as an advocate for the state, are entitled to the protections of absolute immunity"). The Eighth Circuit has stated that "immunity for performance of inherently prosecutorial functions is not defeated by allegations of improper motivation such as malice, vindictiveness or self-interest." *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987), *abrogated on other ground by Burns v. Reed*, 500 U.S. 478 (1991). Moreover, "the Eighth Circuit Court of Appeals expressly recognized that absolute prosecutorial immunity bars claims . . . that a criminal prosecution was instituted without probable cause." *Aguilera v. Wright Cnty., Iowa*, 50 F. Supp. 3d 1057, 1066 (N.D. Iowa 2014) (citing *Saterdalen v. Spencer*, 725 F.3d 838, 842-43 (8th Cir. 2013).

County prosecutors in Iowa are required to "diligently enforce or cause to be enforced in the county, state laws and county ordinances, violations of which may be commenced or prosecuted in the name of the state, county, or as county attorney[.]" Iowa Code Section 331.756(1). Plaintiff states that Sims charged plaintiff with a violation of Iowa Code Sections 708(4) and 723.4(1). That plaintiff's conviction under Section 723.4(1) was eventually dismissed after post-conviction review does not retroactively

cause Sims' actions to be outside his jurisdiction. Sims was acting within his jurisdiction when he charged plaintiff with an offense under Iowa law in an Iowa district court. Plaintiff has not alleged any facts showing Sims was involved in plaintiff's case before the filing of the criminal complaint. As such, plaintiff has not pleaded any facts that support an allegation that the prosecutor was performing investigative or administrative acts that might be outside his absolute prosecutorial immunity. Rather, plaintiff's claims against Sims regard the initiation or conduct of adversarial criminal proceedings against plaintiff—his prosecution. Because those are traditional prosecutorial functions, Sims is immune from suit. *See Hoffert v. Westendorf*, 854 F. App'x 93, 95 (8th Cir. 2021) (affirming dismissal of claims against prosecutors based on absolute immunity).

The Court finds plaintiff's malicious prosecution claim against Sims fails and must be dismissed.

### f.    *Abuse of Process / Due Process*

Plaintiff lists "Abuse of Process (42 U.S.C. 1983)" as a claim on his Section 1983 form and asserts that "Dubuque County Assistant County Attorney Joshua Sims abused the legal process by using the authority of the State of Iowa and Iowa Law to *charge and prosecute* Artisani for Disorderly Conduct, knowing that Artisani was immune from criminal and civil liability." (Doc. 1-1, at 3, 9) (emphasis added).

Courts in this district have dismissed stand-alone Section 1983 abuse of process claims because there is no recognized constitutional violation for abuse of process. *See, e.g., Richter v. Smith*, No. C16-4098-LTS, 2018 WL 6728515, at *9 (N.D. Iowa Dec. 21, 2018). To the extent that plaintiff can assert that the alleged abuse of process amounted to a due process violation, such a claim could be viable under Section 1983. However, as discussed above, Sims is entitled to absolute immunity for initiating charges

and prosecuting plaintiff, which is prosecutorial conduct within his jurisdiction.[10] Because Sim is entitled to absolute immunity, the Court finds plaintiff has failed to state a claim against Sims upon which relief can be granted.

### g.    *Equal Protection*

As noted in the Court's September 24, 2025 order, plaintiff lists a claim of "14th Amendment Equal Protection" on his Section 1983 form but he does not describe how any defendant violated his equal protection rights in his complaint.   In response, plaintiff's supplement to his complaint asserts that:

> Plaintiff was found to be justified in his use of force in defense of himself from an aggressor, by a jury of his peers in Dubuque County.  . . . However, despite being immune Plaintiff was found criminally liable pursuant to Iowa Code 723.4(1) Disorderly Conduct by Fighting.  As a resident of Iowa and as a United States Citizen, Plaintiff was similarly situation to other innocent citizens who enjoy the benefit of criminal immunity for justified use of reasonable force, and Plaintiff suffered denial of equal treatment as a legally recognized "class of one."

(25-CV-1029-CJW-MAR, Doc. 5, at 8).  Plaintiff does not tie this equal protection claim to any named defendant.  As such, plaintiff fails to state a cognizable claim.

In addition, "[t]he Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Where, as here, a plaintiff has not alleged discrimination based on membership in a class or group, the Supreme

---

[10] Plaintiff includes a "Section 1983" parenthetical after "abuse of process" in his list of claims. Thus, his complaint is construed as asserting an abused of process claim under Section 1983. However, to the extent he is asserting a state law abuse of process claim, Iowa applies the same immunity principles to prosecutors and thus Sims is immune from a state law abuse of process claim.  *See Aguilera v. Wright Cty.*, 50 F. Supp. 3d 1057, 1065 (N.D. Iowa 2014) (citation omitted) ("The Iowa Supreme Court has applied essentially identical principles of [federal] absolute prosecutorial immunity to state-law claims."); *Venckus v. City of Iowa City*, 930 N.W.2d 792, 804-05 (Iowa 2019); *Minor v. State*, 819 N.W.2d 383, 394-95 (Iowa 2012).

28

Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff *in all material respects*." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied). Plaintiff's claim is difficult to discern but it appears he is alleging that innocent people are similarly situated to him, but he has failed to establish with his factual allegations that they were identical or directly comparable to him in all material respects and that there was no rational basis for him to have been incarcerated for fighting while they were not.

### h. Cruel and Unusual Punishment

Plaintiff does not include an Eighth Amendment violation in his list of claims on his Section 1983 form. However, referencing the Eighth Amendment, he does assert in his narrative that "[i]t is also cruel and unusual to punish an innocent person" and argues that the Iowa District Court judge set his bond higher than the bond schedule and "denied Artisani a reduction of bond, subjecting him to indeterminate incarceration." (25-CV-1029-CJW-MAR, Doc. 1-1, at 8-9). Plaintiff fails to tie this claim to any of the named defendants, and therefore, to the extent he is asserting an Eighth Amendment claim, such a claim is denied for failure to state a cognizable claim.

### i. Legal Malpractice

The complaint asserts a state law legal malpractice claim against defendant Raker, the attorney appointed to represent plaintiff in his criminal case. Plaintiff asserts that Raker's "conduct in FECR143144 fell below the generally accepted standard of practice and failed to use reasonable diligence and skill on behalf of myself in both this case and

29

several other cases: FECR252934, FECR249626, SRCR24836, and SRCR248366."
(25-CV-1029-CJW-MAR, Doc. 1-1, at 4). He also names as a defendant the unknown professional liability insurance carrier of Chris Raker, but he includes no factual allegations for that defendant.

For all the reasons explained above, plaintiff's complaint fails to state any Section 1983 claim upon which relief may be granted. The Court declines to exercise supplemental jurisdiction over his remaining state law legal malpractice claims. *See* 28 U.S.C. § 1367(c)(3) ("The district court[ ] may decline to exercise supplemental jurisdiction over a claim … [if] the district court has dismissed all claims over which it has original jurisdiction . . ..");  *Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed."). Those state law claims are dismissed without prejudice.

Plaintiff's complaint in 25-CV-1029-CJW-MAR is dismissed.

### 4. *25-CV-2054-CJW-MAR*

On September 24, 2025, plaintiff filed a Section 1983 pro se complaint in 25-CV-2054-CJW-MAR naming as defendants: Black Hawk County, Iowa; Black Hawk County Deputy Sheriff Kevin Nagl, Sheriff Nathan Neff, Captain Martin McDonald, Lieutenant Lionel Braun, Sergeant Steven Paulsen,[11] and unknown deputies #1 and #2, all in their individual and official capacities. (25-CV-2054-CJW-MAR, Doc. 1-1, at 2-4). On the

---

[11] Plaintiff failed to include Paulson in either the complaint's list of defendants or the complaint's caption. (25-CV-2054-CJW-MAR, Doc. 1-1, at 1-4). However, plaintiff listed "Steven Paulsen" in the caption for the motion to proceed in forma pauperis and refers to him within his factual allegations as "Defendant Sergeant Steve Paulson." (*Id.*, at 7; 25-CV-2054-CJW-MAR, Doc. 1, at 1). The Court liberally construes plaintiff's filings as naming Steven Paulsen as a defendant. Plaintiff repeatedly spells the name "Steven Paulsen" in his factual allegations, and thus the Court will do so as well.

Section 1983 from, he asserts that defendants violated his Fourteenth Amendment due process rights, rights against unconstitutional punishment of a pretrial detainee, and equal protection rights. (*Id.*, at 3). He also asserts state law violations of intentional infliction of emotional distress, sexual harassment, and false imprisonment. (*Id.*). Plaintiff states that the events giving rise to his claims occurred at the Black Hawk County Jail between December 2023 and May 3, 2024. (*Id.*, at 6). For relief, he seeks compensatory and punitive damages and a declaration that: defendants violated his constitutional rights; Nagl's actions were extreme and outrageous; Black Hawk County's policies, customs, and practices are unconstitutional; supervisory officials failed to supervise and train Nagl; and Black Hawk County was deliberately indifferent to punishment of pretrial detainees. (*Id.*, at 10).

Plaintiff asserts that on January 20, 2024, Black Hawk County Jail staff conducted a search of the cells in pod A-3. (*Id.*, at 7). Plaintiff states that he threw extra shirts and towels he had been using as a pillow into the hall, where a female staff member placed them in the laundry and stated that "I got rid of the evidence." (*Id.*). Plaintiff alleges that this angered defendant Nagl and that, when Nagl was patting him down, he said "I saw you got your girlfriend to throw your contraband away. I should lock you up right now." (*Id.*). Plaintiff further states:

> While [Nagl] was patting me down and got to my waist area, he pulled my pants and underwear down so he could view my naked buttocks. I immediately turned around in shock, as I was immediately aware that he had removed my pants and underwear and it offended me that he would pull my underwear down in an aggressive way in a mere 'pat down.' The other detainees on A-3 only received only a 'pat down' and were not 'strip searched.' Also, all the other inmates had been merely patted down without undergoing any aspect of a 'strip search' whatsoever.

31

(*Id.*).  Plaintiff asserts that Nagl "immediately became irate," screamed "[i]f you turn around on me again, I'll throw you in the" special housing unit ("SHU"), and instructed him to wait outside the cell while Nagl searched it.  (*Id.*).

Plaintiff alleges that he attempted to report a Prison Rape Elimination Act ("PREA") violation to defendant Paulsen, but Nagl yelled from inside the cell, "Don't you say another word about it" and "If you say one more word about it, I'll throw you in the SHU."  (*Id.*).  Plaintiff asserts that he again attempted to describe Nagl's pulling down his underwear, Paulsen continued to ignore him, and Nagl yelled, "That's it, hook him up and throw him in the SHU."  (*Id.*).  Plaintiff contends that Paulsen stared at the ground and did not acknowledge plaintiff.  (*Id.*).  Plaintiff asserts that Nagl directed for plaintiff to be housed between two very disruptive detainees in the SHU, and that one of the detainees harassed him and threatened him, leading plaintiff to file a PREA complaint with a request to be moved.  (*Id.*).  When that was denied, he states that he filed grievances that were denied by Neff, McDonald, Paulsen, and unknown deputies #1 and #2.  (*Id.*).  Plaintiff states that he remained in the SHU for three weeks, at which time he was returned to the A-3 pod.  (*Id.*).

Plaintiff contends that he was never issued a disciplinary report or found guilty of any misconduct, and he was officially deemed in administrative segregation, rather than disciplinary segregation, for those three weeks.  (*Id.*, at 8).  However, he asserts that "I was specifically placed in the SHU by Deputy Nagl to punish me for trying to report Nagl's sexual misconduct while 'turning around' during the 'pat down' turned into a 'strip search,' and as 'retaliation' for reporting a P.R.E.A. incident."  (*Id.*).  He argues that retaliation amounted to a First Amendment violation.  Plaintiff asserts that Black Hawk County Jail ("BHCJ") "has an unconstitutional policy/custom/widespread practice of maintaining and implementing punitive conditions and restrictions within its 'Administrative Segregation' scheme which are functionally equivalent [t]o the BHCJ's

32

'Disciplinary Segregation' for rule violations." (*Id.*). He further asserts that there is a policy or custom or widespread practice of punishing pretrial detainees at BHCJ without affording them any procedural safeguards. (*Id.*). Plaintiff asserts that defendants Neff, McDonald, Paulsen, and Braun failed to act and supervise or train Nagl. (*Id.*, at 9). Finally, plaintiff states that "Black Hawk County has failed to properly supervise/train it[ ]s BHCJ Officials employed by Black Hawk County/Black Hawk County Sheriff[']s Office, including the Defendants and were/are deliberately indifferent to the constitutional violations at the BHCJ/BHCSO." (*Id.*).

### a. Due Process

Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated through his removal from the A Pod housing unit to the SHU as a pretrial detainee. He claims that Nagl's placement of plaintiff in the SHU between two disruptive inmates, without any process or disciplinary report, was intended as a punishment for attempting to report Nagl's sexual misconduct.

Because plaintiff is a pretrial detainee, his constitutional claims are analyzed under the Fourteenth Amendment's due process clause. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). Due process requires that a pretrial detainee cannot be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Pretrial detainees are presumed innocent and may not be punished."). However, not every restriction imposed on a pretrial detainee "amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Pretrial detainees "may be subjected to certain restrictions and conditions without due process if necessary to maintain order and security in the jail." *Henry v. Franks*, No. 3:22-CV-00186-PSH, 2024 WL 1311307, at *11 (E.D. Ark. Mar. 27, 2024). The analysis of whether a restriction or condition is unconstitutional punishment "turns on whether the restriction or condition is reasonably

33

related to a legitimate governmental objective." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). Accordingly, where a detainee is "placed in segregation not as punishment but for managerial reasons" such as "to protect himself from other prisoners, or to protect jail staff from his violent propensities," no due process is required. *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). *See Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996) (holding that placement of a pretrial detainee in segregation for 13 days, was not "punishment" because it was done for the legitimate governmental objectives of monitoring the plaintiff's health and preventing him from harming other detainees). Placement of a detainee in administration segregation can in some circumstances amount to punishment, necessitating due process protections. *See Martinez,* 977 F.2d at 423 ("Requiring a pretrial detainee to work or be placed in administrative segregation is punishment. . . . Regardless of whether the detentions are classified as 'administrative,' if a pre-trial detainee must remain in a lockup area if he does not work, the detention amounts to punishment."). These due process protections are "set forth in *Wolff v. McDonnell*" and include requirements such as "written notice of the charge." *Henry*, 2024 WL 1311307, at *11.

Here, plaintiff alleges that Nagl placed him in segregated housing as an unjustified and undocumented punitive placement. His factual allegations assert that administrative segregation was used as a pretext for punishment, both in this particular incident and as a matter of custom, widespread practice, or policy at BHCJ. Here, the Court must at this stage take as true plaintiff's factual allegations. Given that, plaintiff has sufficiently alleged a due process violation against Nagl in his individual capacity that this claim is allowed to proceed past initial review. *See McPeek v. Bon Homme Cnty. Sheriff Kelsey*, No. 4:17-CV-04015-RAL, 2017 WL 1194209, at *3 (D.S.D. Mar. 30, 2017) (finding that allegation that detainee was placed in segregated housing as a punishment stated a due process claim).

34

Turning to plaintiff's official capacity claims, "[a] suit against a public official in his official capacity is actually a suit against the entity for which the public official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). To impose Section 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted) ("Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise."). "A policy is a deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Hayes v. Faulkner Cnty.*, 388 F.3d 669, 674 (8th Cir. 2004) (internal quotation marks and citation omitted). To constitute a custom the alleged unconstitutional conduct must be "continuing, widespread, and persistent." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff alleges that there is a custom, widespread practice, or policy of using administrative segregation as a pretextually for punishment and punishing detainees without procedural safeguards. If true, these are sufficient allegations for his claim to proceed against Nagl in his official capacity and against Black Hawk County. At this stage, plaintiff's allegations are very conclusory in nature and may not survive a motion to dismiss, but the Court will liberally construe his claims at this state. Plaintiff's due process claims against Nagl in his official capacity and against Black Hawk County will be allowed to proceed past initial review.

### b.    *Failure to Supervise and Train*

Plaintiff also asserts supervisory liability claims against Neff, McDonald, Braun, and Paulsen for failure to properly supervise and train Nagl. (Doc. 1-1, at 9). In

addition, plaintiff alleges that Black Hawk County failed to properly supervise and train its staff at BHCJ, including the individual defendants, and was "deliberately indifferent to the constitutional violations at the BHCJ/BHCSO." (*Id.*). A supervisor "cannot be held personally liable for his own individual actions unless he '(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Plaintiff].'" *Webb v. Nebraska*, No. 4:21CV3031, 2021 WL 5163301, at *9 (D. Neb. Nov. 5, 2021) (citing *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018)). Again, plaintiff's claims here are very conclusory in nature and may not survive a motion to dismiss. Nevertheless, at this early stage and assuming plaintiff's allegations are true, these claims will be allowed to proceed past initial review.

### c. Grievances

The complaint's allegations against unknown deputies #1 and #2 appear to be limited to their denial of his grievances. The only factual allegation that references the deputies is: "I subsequently filed a series of 'grievances,' which were also denied at every level by then Captain Nathan Neff, then Lieutenant Martin McDonald, then Sergeant Steven Paulsen and other unknown BHCJ Deputies #1 and #2." (Doc. 1-1, at 7). Such a claim for any alleged failure to adequately investigate his grievances, or otherwise their denial of his grievances, fails. "A grievance procedure is a procedural right only, and confers no substantive rights upon the inmates." *Dantzler v. Baldwin*, 721 F. Supp. 3d 768, 788 (S.D. Iowa 2023). Thus, the Eighth Circuit has held that there is no constitutional entitlement to grievance procedures, and that the failure to process grievances or the denial of grievances does not give rise to a constitutional violation. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) ("defendants' denial of his grievances did not state a substantive constitutional claim"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (prison officials' failure to process or investigate

grievances, without more, is not actionable under Section 1983); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); *King v. Houston*, 556 F. App'x 561, 63 (8th Cir. 2014) (per curiam) ("King's allegation that they did not adequately consider his grievances did not state a [Section 1983] claim"). *See also Cook v. Long*, No. 05-CV-211, 2009 WL 1578927, at *2 (E.D. Mo. June 3, 2009) ("As there is no constitutional right to a grievance procedure, it therefore follows that the alleged 'denial' of the grievance, even if improper, cannot be remedied through 42 U.S.C. § 1983."). Because the denial of a grievance does not state a viable constitutional claim, any claims against Neff, McDonald, Paulsen, or the unknown deputies based on their denial of a grievance fail as a matter of law. *See Scotton v. Amerongen,* No. 08-CV-0048, 2009 WL 1853311, at *6 (N.D. Iowa June 29, 2009) ("the only allegations against Defendants . . . relate directly to their denial of Plaintiff's grievances. The court may dismiss these Defendants on this basis."). Accordingly, the two unknown deputies are dismissed from this case.

### d.    *Equal Protection*

Plaintiff lists an equal protection claim on his Section 1983 form. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Nolan v. Thompson*, 521 F.3d 983, 989 (8th Cir. 2008). If a plaintiff does not assert that he is a member of a protected class, he must prove that he was "treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly

comparable to the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015). A plaintiff must state more than a general, conclusory accusation of discrimination. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating a claim requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."); *see also Kaylor v. Fields,* 661 F.2d 1177, 1183 (8th Cir. 1981) (stating that a "complaint must contain something more than mere conclusory statements that are unsupported by specific facts"). Here, plaintiff fails to offer any explanation or facts supporting or clarifying his conclusory allegation of violation of his equal protection rights.[12] He "does not allege there were other pretrial detainees who did not receive disciplinary reports but yet still received notice and a hearing before placement in administrative segregation," for example. *Webb v. Johnson*, No. 4:22CV3175, 2023 WL 3847099, at *6–7 (D. Neb. June 6, 2023). Moreover, to some extent, an assertion that he was treated differently than similarly situated detainees is inconsistent with his allegation that there was custom or widespread practice of punishing detainees by putting them in administrative segregation without due process. Nor does he specify what protected class he is in that formed the basis for treating him differently. *See Lewis v. Jacks,* 486 F.3d 1025, 1028 (8th Cir. 2007) (stating that discriminatory intent or purpose is required for a violation of the equal protection clause and "it is most often proved with evidence that similarly situated inmates were treated differently.").

---

[12] In his attached narrative, plaintiff notes he was the only member of pod A-3 that was strip searched on January 20, 2024. However, he does not indicate whether they had thrown items into the hallway or otherwise demonstrated efforts to avoid consequences for inappropriate items. He also notes that another detainee was moved out of the cell that plaintiff complained about, but again he does not allege facts demonstrating they were similarly situated. Plaintiff does not indicate that either forms the basis for his equal protection claim. Either way, though, these factual allegations do not assert a cognizable claim.

Thus, he has failed to plead a plausible claim. Because plaintiff's equal protection allegation does not raise a right to relief above the speculative level, it is denied.

### e.    *Retaliation*

Plaintiff does not list a First Amendment retaliation claim on his Section 1983 form. However, he states in his attached narrative that "I was subject to retaliation via improper placem[e]nt in the SHU for reporting Deputy Nagl's sexual misconduct via P.R.E.A. complaint, violating my United States First Amendment constitutional right to Free Speech." (Doc. 1-1, at 8). Acts by prison officials may be actionable under Section 1983 if conducted in retaliation for the exercise of a constitutionally-protected right, even if those acts would have otherwise been proper. *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir. 1990). To state a claim for retaliation, a prisoner must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty. Mo.,* 738 F.3d 907, 911 (8th Cir. 2013). "However, claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir. 2008); *see also Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994). Accordingly, a defendant may successfully defend a retaliatory-discipline claim with "some evidence" that the inmate violated a rule. *Goff v. Burton*, 7 F.3d 734, 739 (8th Cir. 1993).

Plaintiff's complaint can be construed to allege a retaliation claim against defendant Nagl for ordering him to the SHU in response to plaintiff's attempt to report Nagl's alleged misconduct. At this stage, plaintiff's allegations sufficiently allege a retaliation claim against Nagl. However, plaintiff does not allege any facts tying any other defendant to a retaliation claim, so this claim is allowed to proceed past initial review only as against Nagl.

39

### f. State Law Claims

Plaintiff's state law claims of intentional infliction of emotional distress, sexual harassment, and false imprisonment will also proceed past initial review.

### 5. 25-CV-2065-CJW-MAR

On November 17, 2025, plaintiff filed a pro se Section 1983 complaint in 25-CV-2065-CJW-MAR naming as defendants: Black Hawk County, Iowa; Sheriff Anthony Thompson; Captain Nathan Neff; Lieutenant Martin McDonald; Sergeant Wayne Sidales; Sergeant Steven Paulsen; and Sergeant Julie Lein. (25-CV-2065-CJW-MAR, Doc. 1-1, at 2-4). He asserts that between October 27, 2023, and May 3, 2024, as well as June 7 through June 14, 2024, defendants violated his First and Fourteenth Amendment due process rights. (*Id.*, at 3, 9). Plaintiff states that while he was a pretrial detainee at BHCJ, defendants "implemented an unconstitutional blanket ban on all paid magazine subscriptions available to jail detainees to order." (*Id.*, at 6). Specifically, he asserts that he repeatedly was not allowed to order the Human Rights Defense Center's "Prison Legal News" using his own personal funds. (*Id.*). Plaintiff contends that defendants Thompson, Neff, and McDonald made policy at BHCJ and were responsible for the policy, custom, or practice of enforcing the blanket ban on paid magazine subscriptions. (*Id.*). He also asserts that Black Hawk County, Thompon, Neff, and McDonald failed to supervise or train subordinates. (*Id.,* at 6-7).

In addition, plaintiff asserts that the Human Rights Defense Center sent him materials, including books, caselaw, and magazines, that the defendants withheld and returned to sender without any notification to plaintiff. (*Id.*, at 7). He asserts that this violated his due process rights. (*Id.*). He contends that all defendants failed to "independently review each publication before refusing them." (*Id.*). Plaintiff asserts that defendants "implements an unconstitutional policy/custom/practice of only allowing BHCJ detainees to order [l]egal, [e]ducational, and spiritual books for purchase and

40

refusing all other books for purchase." (*Id.*). Moreover, he asserts that the deprivation of reading materials to pretrial detainees for an extended period constitutes unconstitutional punishment. (*Id.*, at 7-8). He states that "[a]ll individual defendants were personally involved in denying Artisani constitutionally protected materials by denying not only his repeated grievances, but by being deliberately indifferent to the BHCJ's constitutionally violative practices and policies/customs, and committed all acts or omissions outlined above." (*Id.*, at 8). He also states that they "exhibited callous and reckless indifference to the federally protected constitutional rights of Artisani and acted with intentional malice in implementing and enforcing a clearly unconstitutional ban on books and magazines, and failed to promulgate constitutional policies as policy making officials." (*Id.*). For relief, plaintiff seeks compensatory and punitive damages. (*Id.*, at 9).

A prisoner or detainee has a First Amendment right to send and receive mail, but that right may be restricted for legitimate penological reasons. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley,* 482 U.S. 78, 89 (1987). "Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, [the Supreme] Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world. *Thornburgh*, 490 U.S. at 407–08. This right, however, is subject to limitations based on the needs of the penal system. *Griffin v. Lombardi*, 946 F.2d 604, 607 (8th Cir. 1991). "Accordingly, prison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011). In light of this balance, regulations on inmate mail are valid only if they are "reasonably related to a legitimate penological interest." *Turner*, 482 U.S. 78 at 89. In *Turner,* the Supreme Court set forth the following four factors to be considered

in determining the reasonableness of a prison regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether any "ready alternatives" exist to the prison regulation. *Id.,* at 89–90. *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1039–41 (8th Cir. 2012) (applying *Turner* factors to analyze restrictions on First Amendment rights of civilly committed persons, whom the court described as analogous to pretrial detainees); *Williams v. McClain*, 708 F. Supp. 1086, 1089 (W.D. Mo. 1989) (applying reasoning of *Turner* to pretrial detainee's mail claims). *Compare Hum. Rts. Def. Ctr. v. Union Cnty., Arkansas,* 111 F.4th 931, 935 (8th Cir. 2024) (concluding that a Union County Detention Center's policy limiting incoming mail for detainees to postcards was rationally related to the legitimate penological objectives of reducing contraband and promoting institutional efficiency and consistent with the First Amendment) and *Simpson v. County of Cape Girardeau*, 879 F.3d 273, 279–80 (8th Cir. 2018) with *Hum. Rts. Def. Ctr. v. Baxter Cnty., Arkansas*, 129 F.4th 498, 507 (8th Cir. 2025).

At this early stage of the proceedings, plaintiff's First Amendment allegations are sufficient to survive initial review. *See Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (reversing dismissal of inmate's First Amendment claim that he was denied access to printed materials, including "all magazines" and holding that prison was obligated to proffer legitimate reason for decision to deny these materials); *Jensen v. Pennington Cnty. Police Dep't*, No. CIV. 09-5006, 2009 WL 1475037, at *3 (D.S.D. May 22, 2009) (allowing plaintiff's claim that prison was prohibiting his receipt of magazine subscriptions to proceed past initial review; "the Court finds that this claim should proceed so that defendants may set forth their reasons for the limiting plaintiff's receipt

of this magazine subscription."); *Nelson v. Hjorth*, No. 8:18CV88, 2018 WL 2050571, at *6 (D. Neb. May 2, 2018) (holding plaintiff stated a plausible First Amendment claim challenging County's policy of banning newspaper and magazine subscriptions).

In addition, the Eighth Circuit has indicated that the due process clause may necessitate procedural safeguards when mail is censored. *See Bonner v. Outlaw*, 552 F.3d 673, 676-77 (8th Cir. 2009) ("It is the inmate's interest in 'uncensored communication' that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc. Thus, whenever prison officials restrict that right by rejecting the communication, they must provide minimum procedural safeguards, which include notice to an inmate that the correspondence was rejected."); *Nelson*, 2018 WL 2050571, at * 6 (stating that confiscation of periodicals without notice to the inmate may constitute a due process violation). Plaintiff alleges that BHCJ did not adhere to required procedural safeguards when handling mail, including a failure to provide notice that his correspondence had been rejected. As such, plaintiff's due process claim is allowed to proceed past initial review.

Moreover, plaintiff alleges that the deprivation of reading materials to pretrial detainees for an extended period constitutes unconstitutional punishment. As noted above, under the due process clause of the Fourteenth Amendment, the government may lawfully detain a defendant before trial and subject him to jail restrictions and conditions, as long as those restrictions and conditions do not amount to punishment. *Bell*, 441 U.S. at 538. When a plaintiff does not demonstrate an express intent to punish, he or she must show that "the conditions of confinement were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.*, at 538-39; *see also Odom v. Tripp*, 575 F. Supp. 1491, 1493 (E.D. Mo. 1983) (finding that "a weekend delay in mail distribution is 'reasonably related' to a non-punitive governmental

objective."). Here, plaintiff asserts that defendants acted with "intentional malice" but he provides no factual allegations supporting that conclusion. He does not allege that defendants acted with an intent to punish and he provides no factual allegations demonstrating that. As such, plaintiff must show that the conditions were not reasonably related to a legitimate purpose or were excessive. Whether the mail restrictions were reasonably related to a non-punitive objective or were excessive are factual questions. As such, this due process claim will be allowed to proceed.

### C. Habeas Petition

On October 22, 2025, petitioner filed a petition for a writ of habeas corpus (25-CV-2058-CJW-MAR, Doc. 1-1) using a Title 28, United States Code, Section 2254 form, a pro se motion to proceed in forma pauperis (25-CV-2058-CJW-MAR, Doc. 1), and a pro se motion to appoint counsel (25-CV-2058-CJW-MAR, Doc. 2).

#### 1. Motion to Proceed in Forma Pauperis

Petitioner did not pay the $5.00 filing fee, but he did file a motion to proceed in forma pauperis.[13] For a court to authorize the commencement of an action without the prepayment of the filing fee, a person must submit an affidavit that includes a statement of all the assets the person possesses. *See* 28 U.S.C. § 1915(a)(1). In addition, a prisoner must submit a certified copy of the trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint, obtained from the appropriate official of each prison at which the prisoner was or is confined. *See* 28 U.S.C. § 1915(a)(2); *see also* Rules Governing Section 2254 Cases, Rule 1 (allowing courts to apply the Rules Governing Section 2254 Cases to all habeas cases) and Rule 3(a)(2) (making the affidavit requirement of Section 1915 applicable to

---

[13] The Section 2254 fee is a $5.00 statutory fee set out in Title 28, United States Code, Section 1914(a).

prisoners proceeding in Section 2254 cases).[14]  Petitioner submitted a spreadsheet of his daily transactions between March 1, 2025 and October 6, 2025, but he failed to submit either an affidavit or a trust fund account statement in case 25-CV-2058-CJW-MAR. (See 25-CV-2058-CJW-MAR, Doc. 1).  Because he submitted an affidavit and trust fund account statements in another case, however, the Court finds that he substantially complied and will consider his statements from other cases in ruling on his motion to proceed in forma pauperis in 25-CV-2058-CJW-MAR.  Those statements demonstrate that he does not have the funds to pay the $5.00 filing fee and his motion is therefore **granted**.

### 2. *Applicable Standards*

Rule 4 of the Rules Governing Section 2254 Cases requires the court to conduct an initial review of an application for a writ of habeas corpus and summarily dismiss it, order a response or "take such action as the judge deems appropriate."  *See* Rule 4, Rules Governing Section 2254 Cases.  The court may summarily dismiss an application for a writ of habeas corpus without ordering a response if it plainly appears from the face of such application and its exhibits that the petitioner is not entitled to relief.  *See id.*; 28 U.S.C. § 2243; *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993).

Three primary issues often bar petitions brought pursuant to 28 U.S.C. § 2254. First, that statute requires a petitioner to exhaust his or her claims in the state court system.  *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011).  Second, without leave of the Eighth Circuit of Appeals, petitioners are barred from filing a second or successive habeas petition.  28 U.S.C. § 2244(a)(3)(A).  Third, applications for habeas corpus relief

---

[14] However, the remaining portions of the Prison Litigation Reform Act are not applicable to habeas proceedings.  *See Malave v. Hedrick*, 271 F.3d 1139, 1140 (8th Cir. 2001), citing *Anderson v. Singletary*, 111 F.3d 801, 805 (11th Cir. 1997); *see also Martin v. Bissonette*, 118 F.3d 871, 874 (1st Cir. 1997) and *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000).

are subject to a one-year statute of limitation as provided in 28 U.S.C. § 2244(d)(1). "By the terms of [28 U.S.C. §] 2244(d)(1), the one-year limitation period [. . .] begins to run on one of several possible dates, including the date on which the state court judgment against the petitioner became final." *Ford v. Bowersox*, 178 F.3d 522, 523 (8th Cir. 1999). *See* 28 U.S.C. § 2244(d)(1)(A) (specifying that the 1-year period of limitation runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (explaining 28 U.S.C. § 2244(d)(1)(A)); *Riddle v. Kemna*, 523 F.3d 850, 855 (8th Cir. 2008) (stating that the 90 days is not applicable and the one-year statute of limitation under 28 U.S.C. § 2254 runs from the date procedendo issued if the petitioner's direct appeal does not contain a claim that is reviewable by the Supreme Court); *Snow v. Ault*, 238 F.3d 1033, 1035 (8th Cir. 2001) (stating that the running of the statute of limitation for purposes of 28 U.S.C. § 2244(d)(1)(A) is triggered by: (1) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings; or (2) the conclusion of all direct criminal appeals in the state system followed by the expiration of the 90 days allowed for filing a petition for a writ of certiorari in the United States Supreme Court) (citing *Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998)).

Due to the one-year statute of limitation under 28 U.S.C. § 2244, the petitioner's application for a writ of habeas corpus is timely only if the period was "tolled" for all but a period of less than one year between when the grace-period started, and the date that the petitioner filed the instant action. *See Peterson v. Gammon*, 200 F.3d 1202, 1204 (8th Cir. 2000). Post-conviction relief actions filed before or during the limitation period for habeas corpus actions are "pending" and the limitation period is tolled during: (1) the time "a properly filed" post-conviction relief action is before the district court; (2) the time for filing a notice of appeal even if the petitioner does not appeal; and

46

(3) the time for the appeal itself. *See Williams v. Bruton*, 299 F.3d 981, 983 (8th Cir. 2002) (discussing application of 28 U.S.C. § 2244(d)(2)); *see also Lawrence v. Florida*, 549 U.S. 327, 332 (2007) ("[28 U.S.C.] § 2244(d)(2) does not toll the [one-year limitation] period during the pendency of a petition for certiorari."); *Evans v. Chavis*, 546 U.S. 189, 191 (2006) (holding that an application is tolled during the interval "between (1) a lower court's adverse determination, and (2) the prisoner's filing of notice of appeal, provided that the filing of the notice of appeal is timely under state law"); *Snow*, 238 F.3d at 1035- 36 (concluding that 28 U.S.C. § 2244(d)(2) does not toll the limitation period for the 90 days during which a petitioner could seek certiorari from a state court's denial of post-conviction relief).

### 3.     *25-CV-2058-CJW-MAR*

Petitioner's Section 2254 petition (25-CV-2058-CJW-MAR, Doc. 1-1) names the State of Iowa, Iowa Department of Corrections Director Beth Skinner, and ISP Warden Mark Foreman as respondents.  (*Id.*, at 1).  He is challenging his conviction in *State v. Artisani*, 01071 FECR 252934 (Black Hawk Cnty., Iowa) for willful injury causing bodily injury as a habitual offender.  Petitioner notes that his state post-conviction proceedings are in "preliminary states/not yet filed."  (*Id.*, at 6).

> The Iowa Court of Appeals summarized the facts underlying the case as follows:
>
> Artisani and Anthony Smith were both detainees in the Black Hawk County Jail in September 2023, housed in a maximum-security pod.  Just after arriving in the pod, Smith walked downstairs from his cell to the pod's common area and made a gesture toward Artisani—apparently Smith wanted to see whether Artisani was gossiping about him or willing to talk.  According to a jailer who was working that day and later watched surveillance footage, Smith's gesture was not threatening, and the jailer did not see any "pre-fight indicators" between the two detainees.
>
> Artisani—six-feet-four-inches tall and 235 pounds—got up from playing cards with other detainees, walked over, and met the smaller Smith behind the stairs.  They exchanged a few words, and Smith gave Artisani what

Smith described as a "mean mug" facial expression. Smith's hands remained at his side, and Artisani punched him with a closed fist and shoved him—knocking Smith to the ground, apparently unconscious. From the vantage point of the jailer, it appeared Smith was immediately knocked out: "His arms and legs locked out, and he fell backwards, not bracing himself for the fall." Before anyone could intervene, Artisani "stomped on" Smith's head twice, using the bottom of his foot to repeatedly knock Smith's skull into concrete; Smith made no move to protect his head. Surveillance footage depicted Artisani watch Smith fall, step closer to stomp once, then step over Smith to stomp again, and only stop when a jailer put himself between Smith and Artisani.

The jailer told Artisani to go lock down, and Artisani . . . eventually complied after he was told a second time. Smith was not moving on the ground, still unconscious, and "making like a gargling/snoring noise." He was taken to the hospital and treated for a broken nose and concussion. . .

According to Artisani, when he met Smith under the stairs, Artisani's amateur-boxer "instincts" or "intuition" told him Smith "was going to assault" him. So he punched Smith first, striking him in the head. He did not identify in his testimony exactly what Smith said to him. In Artisani's re-telling, he "doubted the authenticity of [Smith] being maybe that hurt just from one punch" and kicked Smith's head twice because he wanted to "see the fight through"—even though Smith "was semi-conscious" and Artisani "at some point" "realize[d] he's not responding anymore." He denied any intent to seriously injure Smith and vaguely referred to feeling afraid, though he didn't explain why. And he bickered with the assistant county attorney over whether he "kicked" or "stomped" on Smith, explaining that he didn't want to say "stomping" because it "could mean more culpability than kicking." But he ultimately conceded "someone might view it as a stomp."

Artisani claimed that he did not want to ask the jailer for protection because he thought he could stand his ground. He explained his theory of defense from the stand, using words right out of the jury instructions: "The Iowa law, as I understand it, states you don't have to retreat. You don't have to call law enforcement. You don't have to try to get away or escape. I was legally present. He was threatening me, and I used force to eliminate the threat." He testified that he believed the force used was "reasonable.". . .

48

The jury found Artisani guilty as charged of willful injury causing bodily injury, a class "D" felony in violation of Iowa Code section 708.4(2) (2023).

The court sentenced Artisani to prison for fifteen years, enhancing the sentence as a habitual offender under section 902.9 following Artisani's stipulation to prior convictions. Artisani appeals, raising only an issue relating to the stand-your-ground jury instructions.

*State v. Artisani*, 24 N.W.3d 774, 2025 WL 1824293, at *1-2 (Iowa Ct. App. 2025).

On July 2, 2025, the Iowa Court of Appeals concluded that petitioner failed to preserve error or otherwise waived his claim. *Id.*, at *4. In addition, the court concluded that any error in jury instructions was harmless. The court stated:

This was not a stand-your-ground case at trial. As the case was tried and argued, the fighting issue was not whether Artisani had a duty to retreat— instead the case turned on whether Artisani reasonably believed the use of force was necessary in the first place and whether he used reasonable force. Put differently, if the jury found either the use or quantum of force used were unreasonable, it did not reach the stand-your-ground question, and the legal issues related to that instruction was immaterial.

*Id.* The court then concluded that "there was overwhelming evidence that Artisani's use of force for *at least* one of the two head-stomps was not reasonably necessary to defend himself nor was the amount of force he used reasonable under the circumstances." *Id.*, at *5. The Iowa Supreme Court denied petitioner's application for further review and procedendo issued on August 28, 2025.[15]

---

[15] Iowa state court criminal and civil records may be accessed online at: http://www.iowacourts.gov/For_the_Public/Court_Services/Docket_Records_Search/index.asp . *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

On October 20, 2025, petitioner filed a state court application for post-conviction relief (PCR). *Artisani v. State*, 01071 PCCV 155848 (Black Hawk Cnty., Iowa). Counsel has been appointed for petitioner, but the PCR case has not otherwise substantively progressed.

On October 22, 2025, petitioner filed his Section 2254 petition. The seven claims that petitioner advances in his petition are: (1) the Iowa District Court inaccurately instructed the jury on the stand-your-ground defense; (2) the Iowa Court of Appeals erred in concluding the instructional error was not preserved; (3) the Iowa Court of Appeals erred in concluding any error was harmless; (4) the Iowa Court of Appeals erred in concluding that it is not a stand-your-ground case; (5) the Iowa Court of Appeals "made several errors of fact in its ruling"; (6) ineffective assistance of counsel; and (7) the Iowa Court of Appeals "ruling violates due process and equal protection rights in that its ruling denied petitioner's right to 'stand his ground' under Iowa self-defense law and specifically holds that a pretrial detainee is not entitled to a stand your ground defense because he's in jail and there is nowhere to retreat to, thereby making Iowa's self[-]defense laws inaccessible." (Doc. 1-1, at 3-4).

A petitioner bears the burden to show all state remedies have been exhausted or that exceptional circumstances exist that warrant waiver of exhaustion. *Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998). A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery,* 474 U.S. 254, 257 (1986); *Anderson v. Harless,* 459 U.S. 4, 6 (1982); *Picard v. Connor,* 404 U.S. 270, 276 (1971); *Miller v. Lock,* 108 F.3d 868, 871 (8th Cir. 1997); *Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir. 1993); *McDougald v. Lockhart,* 942 F.2d 508, 510 (8th Cir. 1991). In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of

50

Appeals rejects an appeal argument. In the context of the Section 2254 exhaustion requirement, the Eighth Circuit Court of Appeals has stated:

> an Iowa prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts.

*Welch v. Lund*, 616 F.3d 756, 759 (8th Cir. 2010).

To satisfy the fair presentment component of the exhaustion requirement, a petitioner must have "'refer[red] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Middleton v. Roper,* 455 F.3d 838, 855 (8th Cir. 2006) (quoting *Abdullah v. Groose,* 75 F.3d 408, 412 (8th Cir. 1996)); *see also Ashker,* 5 F.3d at 1179. A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the applicant's federal habeas corpus application have been properly raised in his or her state court proceedings. *Keithley v. Hopkins,* 43 F.3d 1216, 1217 (8th Cir. 1995); *Flieger v. Delo,* 16 F.3d 878, 884 (8th Cir.1994) ("A petitioner must present '*both* the *factual and legal* premises' of his claims to the state courts in order to preserve them for federal habeas review.").

Based on the forgoing, it appears that petitioner has exhausted only his first claim in state court on direct appeal. The habeas petition does not specify which claims he presented in his PCR application. The current Section 2254 petition is mixed, as it includes both exhausted and unexhausted claims. Federal district courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (citing *Rose v. Lundy*, 455 U.S. 509 (1982)); *Hicks v. Tripp*, No. 22-CV-1016, 2023 WL 2119477, at *9 (N.D. Iowa Feb. 17, 2023), *certificate of appealability denied*, No. 23-1441, 2023 WL 5689715 (8th Cir. Aug. 14, 2023). "When faced with a mixed petition, district courts have four options available: (1) dismiss the petition without prejudice; (2) stay the petition pending

the outcome of state proceedings, (3) allow the petitioner to delete all unexhausted claims and proceed on the remainder, or (4) if the unexhausted claims are meritless, deny them under 28 U.S.C. § 2254(b)(2)." *Id*. A stay and abeyance is only available in "limited circumstances" and is "only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277; *see also Craft v. Iowa,* No. C13-0117, 2014 WL 5107048, at *2 (N.D. Iowa Oct. 10, 2014); *Tate v. Titus*, No. 17-CV-4594, 2018 WL 2451252, at *1 (D. Minn. May 31, 2018).

At this juncture, the Court finds it is appropriate to dismiss his Section 2254 petition without prejudice to refiling[16] once he has exhausted all the claims he wishes to assert. *See Sund v. Young*, 2014 WL 2506194 (D. S.D. 2014) (dismissing a Section 2254 petition without prejudice because the face of the petition made it clear exhaustion had not yet occurred). District courts should not hold unexhausted cases in abeyance absent exceptional circumstances, such as when state remedies are inadequate or fail to afford a full and fair adjudication of federal claims, or when exhaustion in state court would be futile. *Carmichael*, 163 F.3d at 1045. The present case is not an exceptional circumstance. Petitioner will be free to file a new Section 2254 petition once he has completely exhausted his issues in the state courts.

---

[16] A subsequent federal habeas petition would not be deemed "second or successive." *See* 28 U.S.C. § 2244(b); *Slack v. McDaniel*, 529 U.S. 473, 485-86 (2000) ("A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition."); *Wille v. Knutson*, No. 18-CV-2069, 2018 WL 6520654, at *3 (D. Minn. Sept. 20, 2018), *report and recommendation adopted,* No. 18-CV-2069, 2018 WL 6064909 (D. Minn. Nov. 20, 2018) ("That this Court has reached the merits of Wille's request for a *Rhines* stay does not mean that his petition itself has been decided on the merits. Indeed, this Court cannot reach the merits of the claims in Wille's petition, as that petition presents both exhausted and unexhausted claims.").

### III.    CONCLUSION

For the reasons stated:

1.    Plaintiff's motions (25-CV-1029-CJW-MAR, Doc. 4; 25-CV-2054-CJW-MAR, Doc. 2) for recusal are **denied**.

2    Plaintiff's motions (25-CV-1029-CJW-MAR, Docs. 1, 3; 25-CV-2054-CJW-MAR, Doc. 1; 25-CV-2058-CJW-MAR, Doc. 1; 25-CV-2065-CJW-MAR, Doc. 1) to proceed in forma pauperis are **granted**.

3.    The Clerk of Court is directed to file each complaint (25-CV-1029-CJW-MAR, Doc. 1-1; 25-CV-2054-CJW-MAR, Doc. 1-1; 25-CV-2065-CJW-MAR, Doc. 1-1) without the prepayment of fees.

4.    The Clerk of Court is directed file the petition (25-CV-2058-CJW-MAR, Doc. 1-1) without the payment of fees.

5.    Plaintiff is ordered to submit an initial partial filing fee of $5.00 for each Section 1983 case (25-CV-1029-CJW-MAR; 25-CV-2054-CJW-MAR; 25-CV-2065-CJW-MAR) by no later than thirty days from the date of this order.  If necessary, he may request in a written motion an extension of time to pay the initial partial filing fees.  Additionally, after he pays the initial partial filing fees, the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in 28 U.S.C. § 1915(b)(2).  Until the three $350.00 filing fees are paid in full, he is obligated to pay and the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in 28 U.S.C. § 1915(b)(2).  Specifically, until the three $350.00 filing fees are paid in full, he is obligated to pay and the institution having custody of him is obligated to forward 20 percent of the preceding month's income credited to his account each time the amount in the account exceeds $10.00.

6.      The Clerk of Court is **directed** to send a copy of this order and the notice of collection of the filing fees to the appropriate official at the place where plaintiff is an inmate.

7.      After an initial review of case 25-CV-1029-CJW-MAR, plaintiff's complaint (25-CV-1029-CJW-MAR, Doc. 1-1) is **dismissed** because it fails to state a claim upon which relief may be granted. That dismissal could count as a strike under 28 U.S.C. § 1915(g). *See Gonzalez v. United States*, 23 F.4th 788, 791 (8th Cir. 2022) (noting that although a district court cannot prospectively find that a plaintiff has accrued one or more strikes under Section 1915(g) the court may alert the plaintiff about potential consequences of future litigation).

8.      After an initial review of case 25-CV-2054-CJW-MAR, plaintiff's complaint (25-CV-2054-CJW-MAR, Doc. 1-1) is **allowed to proceed** past initial review except his equal protection claim is dismissed for failure to state a claim. Unknown deputies #1 and #2 are also **dismissed** from this case.

9.      The Clerk of Court is directed to serve, via certified mail or similar tracked mail service, the complaint (25-CV-2054-CJW-MAR, Doc. 1-1), along with a copy of this order and the waiver of service of summons form, on defendants in care of the Black Hawk County Jail.[17] The Clerk of Court is also directed to send a copy of this order, along with the complaint, to the Black Hawk County Attorney's Office.

---

[17] The Clerk of Court may send one packet to the Black Hawk County Jail including the documents for each defendant.

10. After an initial review of case 25-CV-2065-CJW-MAR, plaintiff's complaint (25-CV-2065-CJW-MAR, Doc. 1-1) is **allowed to proceed** past initial review.

11. The Clerk of Court is directed to serve, via certified mail or similar tracked mail service, the complaint (25-CV-2065-CJW-MAR, Doc. 1-1), along with a copy of this order and the waiver of service of summons form, on defendants in care of the Black Hawk County Jail.[18] The Clerk of Court is also directed to send a copy of this order, along with the complaint, to the Black Hawk County Attorney's Office.

12. After an initial review of case 25-CV-2058-CJW-MAR, plaintiff's petition (25-CV-2058-CJW-MAR, Doc. 1-1) is **dismissed** without prejudice to refiling. A certificate of appealability **shall not issue**.

13. Plaintiff's motion (25-CV-2058-CJW-MAR, Doc. 2) to appoint counsel is **denied as moot**.

**IT IS SO ORDERED** this 30th day of January, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

---

[18] The Clerk of Court may send one packet to the Black Hawk County Jail including the documents for each defendant.

**TO:  WARDEN/ADMINISTRATOR**
   **Iowa State Penitentiary, Fort Madison, Iowa**

## NOTICE OF COLLECTION OF FILING FEES

You are hereby given notice that Nersius Adonliel Artisani, No. 1026352, an inmate at your facility, filed the following lawsuits in the United States District Court for the Northern District of Iowa: *Artisani v. Dubuque County, Iowa, et al.*, Case No. 25-CV-1029-CJW-MAR, *Artisani v. Black Hawk County, Iowa, et al.*, Case No. 25-CV-2054-CJW-MAR, and *Artisani v. Black Hawk County, Iowa, et al.*, Case No. 25-CV-2065-CJW-MAR. The inmate was granted in forma pauperis status in each case under Title 28, United States Code, Section 1915(b), which requires partial payments of the $350.00 filing fees. Based on the inmate's statements, the court has assessed initial partial filing fees of $5.00 in each case, which the inmate must pay now to the Clerk of Court. *See* 28 U.S.C. § 1915(b)(1).

> After payment of the initial partial filing fee, the [inmate] shall be required to make monthly payments of 20 percent of the preceding month's income credited to [his] account. The agency having custody of the [inmate] shall forward payments from [his] account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, you must monitor the account and send payments to the Clerk of Court according to the system provided in 28 U.S.C. § 1915(b)(2), that is, after the inmate pays the three initial partial filing fees of $5.00, you should begin making monthly payments of 20 percent of the preceding month's income credited to the inmate's account until the filing fees are paid in full. Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed. If the inmate has been relocated to a different institution, please forward this Order and Notice to the institution having custody of him. Any institution having custody of the above-named inmate shall collect and remit the filing fees as set forth above.

s/*jlh*                Deputy Clerk

Paul De Young
U.S. District Court Clerk
Northern District of Iowa

1